I'm sure all three of you have been in cases involving 2254 where you have said if I had this case de novo, I would rule differently. You've got it de novo because of D2. I've done a lot of this work and I have never seen such an unreasonable interpretation of the facts. I argued this case. I was flabbergasted when it was suggested that Prado Pacheco was saying well let's leave. When he really said let's go since it would be Gary and I against the black guy. That wasn't just leaving. And also to back it up was the 9-11 call. The 9-11 call was hey, and that's right in the record, hey there's a guy going to beat up the boyfriend of a girl out here. Well that was Nathan Smith. Ortiz was the girlfriend. There was no other boyfriend-girlfriend relationship in the Pachecos. It was them. They were being attacked. And to say it any other way, and even the magistrate who ruled on this case, what she said in her R&R, she quoted the police report document that Prado Pacheco told Officer Wallen. The black guy started to talk shit to Crystal and Gary while pulling out what looked like an axe handle from the back of the red hatchback. I got out of the jeep and told the black guy let's go. Right there the court of appeals stopped and said okay. That meant they were leaving. But they never read or even considered the rest of what the police officer wrote down. Let's go since it would be Gary and I against the black guy. What does that mean? The black guy backed off and started to talk shit telling me he was going to call his homies. I told the black guy go ahead, call his homies because I really thought we'd be gone before his friends showed up. That was written in a police report. Right. Why does that just show that they were at most the initial aggressors and verbally challenging Smith to a confrontation? Is there any doubt that they were on their way out of the parking lot or they were about to leave when the buddies showed up? We're talking about jury decisions which jury never heard that the Pachecos were the original aggressors and lied because this was brought up in the preliminary hearing and Prado lied and said well I never said that. I never said that. So as a defense attorney I'm going to bring that out and say how can you believe what these people are saying? By the way, everybody was trying to leave. So was Nathan. He was drunk in the car. He called up the Ortiz lady and said I want to go home and he crossed over. But my point is that even if counsel had undermined their credibility by introducing some evidence that perhaps the Pachecos were the aggressors, does that change the fact that they were leaving when the buddies from across the street came and beat them up? There's no justification for beating somebody up if they were retreating from a fight, is it? No, I'm not talking, there were some bad people who came over across the street but those identifications were awful. It awfully varied and all over the place and even Pacheco said I don't know who was hitting who. It's in the record. So if you're going to disbelieve Pacheco, if you're going to say wait a minute, Pacheco totally turned this around, how are you going to as a juror believe that Nathan was beating on these people? Now his declaration, but I want to say what the magistrate said because it's so important. Because the magistrate said herself in the district court, this court believes that the court of appeals interpretation of Prado Pacheco's comments is a stretch. This court finds that the more reasonable reading, this is on page 34 of one excerpt of the record. The more reasonable reading of Prado Pacheco's statements in the police report is that they were words of aggression and escalation, not retreat. The petitioner's defense likely would have been stronger if his trial counsel had elicited these statements on cross-examination or called Officer Wallen as an impeachment witness. But when you say something is more reasonable, then what the court of appeal concluded is less reasonable. If it's less reasonable, it's 2254D2 and you are in de novo land and you can decide this without all this deference. Isn't there a difference between more reasonable and unreasonable? I mean you're saying that the magistrate judge is saying this is a more reasonable interpretation, but that's not the same as saying that it was unreasonable for the California court of appeals. When they left out the most important thing, which was after the words go, which is it would be Gary and I against the black guy. How could they left that out? And you know, Judge Wynn always asks, I've been in front of you before, and you say, what's your best case? Well, my best case is Wiggins, right? Wiggins. And then Wiggins, that's a Supreme Court case. And I can just, I quoted it on page 42 of my brief. It's really good language. And it's this case. It's my case. Wiggins is my case, which says that where the State court decision shows that the State court refused, they deliberately, they refused to consider facts it should have considered in deciding a constitutional claim, that decision is unreasonable. They refused to consider facts which made, which were really his defense. Do you see what I mean? They refused. Wiggins versus Smith, 539 U.S., 510, 528, Supreme Court of the United States. They have decided that 2254 D2 applies here. You are not constrained by AEDPA. It's just like if you were hearing this in the district court, you were trial judges, or courts on review. You would rule, wait a minute, that counsel was ineffective. And he was honest. There was no, and this is what bothers me, is that then the magistrate goes on and say, well, this is a tactical decision. He wrote a declaration. He's a dying lawyer. He's dead now. He was dying. He was sick during this. And he said, I overlooked this. I totally overlooked Officer Wallin's arrest report. That's in the record. That was also before the Court of Appeal in a habeas. Let me go back to the standard review. Here, the Court of Appeals, with regard to the impeachment, different impeachment, lost opportunities, or opportunities not taken, said arguendo. It didn't find that it was improper. It just said arguendo. This was ineffective assistance of counsel. So are we looking at that, DeNovo? You're looking at it. Because they didn't even address the issue, that first prong? They never went anywhere. They didn't even, they didn't recite the facts, so they never got there. And so, I mean, I cannot imagine a juror, no juror, saying, what? The policeman said something totally different than Mr. Prado-Pacheco said just to us on direct, in prosecution? Can you explain to me briefly your theory of prejudice again? The failure to impeach? It actually wiped out any defense. He had no witnesses. His defense was self-defense, but he didn't do anything. And his defense was that the Mexican people, they were drunk, because that was also said. That was never brought up, because the other officer said, I couldn't even understand this witness, the daughter. Couldn't understand her. And the court of appeals said, oh, well, but she drove away, so she couldn't have been that drunk. Because the officer let her drive away, he couldn't even understand her. They were intoxicated. So the prejudice is that it took away the possibility of one juror having reasonable doubt. That's all you have to have to have a favorable result in Strickland, is a chance for one juror to have a reasonable doubt and say, whoa, this does not smell right, because of Officer Wallen and then his denial that that ever occurred, which would have been brought out because of the drunken people. And I haven't even mentioned that the Ortiz lady testified under oath at the prelim. And that was perfectly admissible. And just because my friend is going to say, well, wait a minute, but she pled guilty, that's not going to, the jury is still going to hear her saying that she said, yeah, I was, recite the whole rattling. And then being, what she testified to fit exactly with what is on the 911 call. Her boyfriend was being attacked. What she testified to was exactly what Wallen heard from Prado, that they were after him. Well, when it comes to Ortiz, though, this doubly deferential standard, what we look at, and with respect to Ortiz, and the Court of Appeals concludes that it was reasonable to make a tactical decision since she had pled guilty not to have brought that testimony in. Can I respond to that? Of course. That's the question. The defense attorney responded in his declaration. See, that's the thing. This was a consolidated habeas. You can't ignore his declaration. If I didn't have a declaration from the defense attorney, then we'd be saying maybe he made a tactical. But you know what? I hope my friend doesn't say, oh, he was falling on his sword. You know, when you're dying, when you're sick, you don't want to pass on saying, without saying the truth. The truth was, I blew it. He said in his declaration. In connection with Ortiz? Yeah. He said, I should have put her on. I should have put her on, but he wasn't prepared. He did not, according to the other attorney who took over. Not putting her on, right? Bring the testimony from her. You're right. I should have put her testimony on. You're right. Thank you, Judge Settle. But I'm not sure, according to the attorney who took over, he didn't have the prelim transcript. He was not, he didn't do a good job, and he admitted it. I mean, what would have got, if he hadn't died, he probably would have been, you know, brought before the bar. I mean, he really put his whole career on the line. He's gone now. Well, with this doubly deferential standard, isn't your best argument cumulative error, and you haven't talked much about that? Well, first, you're saying doubly deferential. I want to take away the double. I say you're not. I'm saying don't assume double deference when you've got 2254-D2 that puts you in de novo land. There is no double deference. Some part of this may, we may be in separate standards and looking at the different alleged errors. Okay. Cumulative error certainly is awesome, and I argued it, and it's, there's one thing I want to talk about with cumulative error in my, the COA. My friend's right. The COA, the Certificate of Appealability, lists all, and by the way, if you look at the record, I'm the one who, I had to shake the district court judge into issuing a Certificate of Appealability. Do you know what, if you follow this record, yeah, me, the defense, I had to keep sending in, please, I've got a guy who in his declaration, please read Nathan Smith's declaration. He wrote it himself. I was sitting in the car watching this, drunk as a skunk. Okay. That's called innocence. But anyway, he's sitting in jail. The district court judge says I issue a Certificate of Appealability. Stop. And naturally our commissioner says no, no, no, you can't do that, and bounced it back to him. This is, this all went on, and nothing happened. So I would start to send in suggestions, and I did. It's in the record. All my suggestions of what your COA should be. Try this one, try that one. Nothing happened. Your time's about up. Oh my gosh, I'm in the red. I'll give you two minutes. Thank you for telling me. I'll stop. Okay. But I totally missed that. I won't have much time left. At any rate, human error is a biggie. And so the point is, if I made a mistake and left out something, because I'm the one that wrote it, please consider it as a non-certified issue. Good morning, Your Honors. Christopher Beasley, Deputy Attorney General, on behalf of the respondent. Mr. Corey seems to be reading its Court of Appeal opinion that is very different from the one that I have before me. When I read this Court of Appeal opinion, and I read what the Court of Appeal actually says, it says, according to Officer Wallin's police report, Prado stated that during the verbal altercation, he saw Defendant pull what appeared to be an axe handle from his car. And then Prado got out of his Jeep and told the Defendant, let's go, since it would be Lopez and Prado against the Defendant. Court of Appeal recognizes that. Defendant backed off and told Prado he was going to call his homies over. Prado told the Defendant to go ahead and call his homies, because Prado thought he and his family would be gone before the Defendant's friends showed up. Court of Appeal recognizes all of these facts. Nowhere in this decision does the Court of Appeal interpret let's go as some sort of a statement to his family. Let's get out of here, family. That's not what the Court of Appeal is saying. Court of Appeal, in its analysis, says, Prado's statement to Officer Wallin indicated that the Defendant pulled out an axe handle, that Prado responded to this aggressive act by verbally indicating he was willing to fight, and that Prado and his family were trying to leave when Defendant's accomplices arrived. So, just as you observed, Judge Nguyen, they were trying to leave when everyone else showed up. Court of Appeal recognized all of the evidence that was before it. What we're hearing from Mr. Corey is a fundamentally different kind of set of facts from what is in the Court of Appeal's decision. The Court of Appeal's decision is entitled to deference, because it had all of the facts, and it considered all of those facts, and it came to a reasonable decision. I don't really understand how the Magistrate got to where it got, because the Magistrate's, I really don't understand where the Magistrate got that it was a stretch, what the Court of Appeal was saying. Because the Court of Appeal's analysis clearly takes into consideration everything that Officer Wallin had in his report, which was before the Court of Appeal in the state habeas petition. So that takes care of Prado. As far as the failure to introduce Ortiz's preliminary hearing testimony, is it professionally unreasonable for counsel to decide, I'm not going to introduce testimony that later proves to be discredited because of a guilty plea? Is it professionally unreasonable to do that? The Court of Appeal recognized that Ortiz's testimony actually helped and corroborated parts of the prosecution's case. She put herself there at the scene with the defendant. She admitted her argument with Crystal Pacheco after she emerged from the bathroom. She admitted the tension that existed between the Pacheco family and herself and her boyfriend, the defendant in this case. And she also admits the arrival of backup. She says in her preliminary hearing testimony that she did not call anyone to get backup. What she never says is that the defendant did not call anyone for backup. So that leaves a question that's open and that a jury could reasonably conclude, even if this had been admitted, a jury could reasonably conclude that the defendant did indeed call. And what's interesting is that the defendant's own declaration then, if that's pitted against Ortiz's preliminary hearing testimony, if both of those had come in, they would have been in diametrically opposed opposition to each other. Because the defendant claimed that she called for the backup in his declaration. So what is counsel to do, right? Well, Smith is arguing that trial counsel didn't even have this statement. And there was no tactical decision there. This was his later admission that was a mistake. Just to clarify, Judge Settle, are you asking about the statements that Ortiz made in the preliminary hearings? Yes. Okay. So counsel did know about Ortiz's preliminary hearing testimony. In fact, he says, I knew about it, but I decided not to use it. And then after the fact, when I realized that the defendant wasn't going to testify, then is when I should have put it in, but I didn't. And that was my mistake. So the actual declaration from counsel is that he did know about the preliminary hearing transcript, knew it was there, and decided not to put it in. And then after the fact decides, oh, well, maybe I should have put it in because the defendant didn't actually testify. Moving on to, well, I can address each of these point by point if this court wants. But Judge Settle, you asked about cumulative error. And if we go through all of these things that the Court of Appeal addressed in its very, very thorough opinion, there was nothing to accumulate. There was no error, except, I'll take it back, there's one error that the Court of Appeal acknowledged. And that one error was that defense counsel should have introduced Crystal Pacheco's statement to police that the defendant did put the bat, stick, ax handle, whatever it was, back into the car. So what she says to the police is the defendant took the bat out and then he put it back. Now, at trial she testified that he had a bat that he was using to beat up on people, on her family members. So is that inconsistent? There could be, that evidence that she had stated to the police could be introduced. But that statement is not entirely inconsistent because she never says he did not re-get the bat, retrieve the bat again in the police statement. It's just once he put it away. That's actually corroborated by Prado's statements to police where they backed off. After Prado had said, let's go, you know, the whole challenge to the fight kind of thing, and the defendant backed off. So when he backs off, that's when he's putting the bat back. Well, that was a significant issue because it was a matter of aggravation, right? The deadly weapon use. And so that became an important part of the defense. It was. It was. But the fact that counsel could have brought this one statement that he put it back in wouldn't have changed the overall mass of evidence that was there because so many other witnesses, including Villanueva, who was the restaurant employee who talked about it, they all put a bat or a weapon into the defendant's hands beating up on the family with his cohorts. So even though Crystal's statement to the police, he put the bat back, could have been introduced, it would not have done, there would have been no effect because clearly he could have gotten it back once his homies arrived and could have then proceeded with the attack at that point. And nothing that she says to the police undermines that. So it wouldn't have, it wouldn't have had that kind of a prejudicial effect. And that's what the court of appeal, that's how the court of appeal analyzed it. It looked at, was this deficient performance? Yeah, it could be construed as deficient performance, but was it prejudicial? And the answer is no, it wasn't prejudicial because when you look at all of this testimony that came in, there was no, there was no effect from that. So if that's the only real error, there's nothing that can accumulate to undermine confidence in this verdict. There's nothing that suggests that this was a fundamentally unfair trial because of trial counsel's representation. Trial counsel had a bunch of lemons to deal with in this case. And trial counsel tried his best to make lemonade out of that bunch of lemons. But sometimes all you can get is lemon juice. It was not a case that was going to be easy for counsel. He, the defense that he actually went with was to argue the inconsistencies between the different, the different testimony from the different witnesses and to try to, to establish doubt in the jurors because each witness had a little bit of a different perspective of what had happened. And that's, that's, that's powerful argument to, to present that when you don't have very much by way of evidence to present to a jury that exonerates your client. Counsel, there was an argument that had been raised in direct appeal. It's not on, before this court, but one of the arguments that had been raised on direct appeal was counsel should have done more with the intoxication. And the court of appeal reasoned, look, counsel has a tactical responsibility to advocate for his client and counsel can make a tactical choice not to pursue a particular defense because it might in order to the detriment of the defendant and might in order to the benefit of the prosecutor. The prosecutor talked about the intoxication as if there was an instruction about that. Well, the court of appeal went through and analyzed what did defense counsel here do? Defense counsel went through the discrepancies of the different witnesses and chose to not highlight the intoxication material because under that theory, and, and not just that there were discrepancies, but to pull the defendant completely out of the fight entirely, that he was not involved. Under an intoxication defense, he's now involved. He's actually hitting people, but it's a mental state defense. And defense counsel could reasonably conclude, I don't want to go that route. I don't want him involved in this fight at all. I'm going to argue the discrepancies and put him over here. He's not involved. That's reasonable advocacy. That's professionally competent advocacy. When we look at this record as a whole, there is nothing that suggests that counsel was ineffective. There is nothing to accumulate. There was no error. The court of appeal was reasonable in its decision. What about not calling Officer Wallen? Didn't the court say, again, assuming arguendo, that that was not effective assistance of counsel by not calling Officer Wallen to testify with respect to the report that was made to him in which no identification at that initial interview identified Smith? I think that you're referring, correct me if I'm wrong, but I think you're referring to the claim that the defense counsel should have introduced the material in the report that suggests that none of the witnesses identified the defendant specifically. I think that's what you're addressing. Yes, whether through the report or calling Wallen. The court of appeals decision rests upon, in rejecting that there's an ineffective assistance of counsel there, rests upon the fact that counsel is going to look at this report and is going to see that there's all sorts of statements that corroborate the prosecution case. Although the witnesses don't specifically identify the defendant, there's also a reason that they don't. This is a report that's being generated on the spot, in the heat of the moment. As the court of appeal recognized, this is not an after-the-fact kind of investigation where a detective is able to sit down. All that makes a good argument, but it doesn't mean it's not useful. That's correct, but just because something is useful doesn't mean that counsel must introduce it to be professionally reasonable. That's where the court of appeals ultimate decision rests, is that just because the counsel decided not to use it doesn't mean that it was deficient. But even if it were deficient, there's that second promise statement, there is no prejudice because all of this material would simply corroborate the witness testimony. And so there can't be an IAC, there cannot be a successful claim of ineffective assistance of counsel when you have no prejudice, setting aside even the question of whether there's a deficient performance. In conclusion, the court of appeals decision is reasonable. There is nothing here that warrants, that takes this outside of the scope of the ADPA relief, or the ADPA standard of review. And this is a case where double deference, as the U.S. Supreme Court has counseled, applies. And so because of that double deference, because the court of appeals decision was reasonable, we would ask this court respectfully to affirm the judgment of the court of appeals in denying habeas relief. If there are no further questions, we would submit. Thank you very much. I will be brief. But there's another case, the Supreme Court case, for my best case, Richter, where the Supreme Court said post hoc rationalizations by the state court are acceptable. I'm paraphrasing it, but that's in there. And that's what the court of appeals did here. They rationalized as to what was going in a defense attorney's mind when, in the same case, I had a habeas and declarations from him saying, no, that's not what I was thinking. See, I feel like I'm in a funny barn sometime, really, where I have a court of appeals saying, making up all these stories about what defense counsel thought when defense counsel said no. And he's honestly, he's not falling on his sword. He's honestly saying, no, I blew it. I've done that. When I mess up, I fess up. And that's what we all should do as attorneys and judges. When we mess up, we should fess up. And that's what this attorney did. Bless his soul, he's gone now. He died shortly after this case. He said he was sick. And he was right. And as far as he even mentioned, I've got to get these facts. Oh, by the way, even though the court of appeals did mention Wallin's statement, they said, we think that Prado's statements to Officer Wallin were essentially favorable to the prosecution. Oh, my gosh. OMG, as my kids would say. That's unreasonable. Of course, it wasn't favorable to the prosecution. It was favorable to Nathan Smith III. That's the unreasonability here. And I know I'm running out of time. I'm sorry for imposing on you. But I've got to tell you, look at Ben Sanchez. Ben Sanchez was his attorney. Look at his declaration. He says, I'm not even sure I did have that transcript with me. He was in bad shape. And the attorney who took over for him said he had nothing in his file. He didn't have the transcripts. So what I'm saying is all the prejudices and Judge Wynn said, what's your prejudice? It's depriving even the chance, because that's the standard, a chance of one juror finding reasonable doubt. I think one juror would have found reasonable doubt if there had been effective counsel. And that's all I'm asking for. And that's a prejudice. Thank you. Thank you, counsel. The case just argued will be submitted.
judges: Reinhardt, Nguyen, Settle